# *No. 16-1464*

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

**JOANIE ALSTON**,
                    Appellant,

v.

**PARK PLEASANT, INC.**,
                    Appellee.

---

APPEAL FROM ORDERS OF
UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA,
ENTERED ON OCTOBER 21, 2015 AND FEBRUARY 2, 2016

---

*Corrected*

**BRIEF FOR APPELLANT**

---

Dennis L. Friedman, Esquire
Attorney for Appellant
1515 Market Street
Suite 714
Philadelphia, PA 19102-1907
(215) 567-4600

## CERTIFICATE OF INTEREST

Alston v. Park Pleasant, Inc.
Appeal No. 16-1464

Counsel for the Appellant, Joanie Alston, certifies the following:

1.    The full name of every party or amicus represented by me is:  Joanie Alston.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:  N/A

3.    The parent companies, subsidiaries (except wholly-owned subsidiaries), and affiliates that have issued shares to the public, of the party or amicus curiae represented by me are:  N/A

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:  N/A

DENNIS L. FRIEDMAN, ESQUIRE
Attorney for Appellant
1515 Market Street
Suite 714
Philadelphia, PA 19102-1907
(215) 567-4600

# **TABLE OF CONTENTS**

**PAGE**

Table of Cases ................................................................................ i

I.    Statement of Subject Matter and Appellate Jurisdiction .......... 1

II.   Statement of the Issues ............................................................ 1

III.  Statement of the Case ............................................................... 2

    A.   Statement of the Facts Relevant to the Issues Presented for Review ...................................................................... 2

IV.   Statement of Related Cases and Proceedings .......................... 5

V.    Summary of Argument ............................................................. 5

VI.   Argument .................................................................................. 6

    (a).  Scope and Standard of Judicial Review ........................... 6

    A.   The Trial Court's Denial of Plaintiff's Motion for Spoliation Sanctions Was an Abuse of Discretion ........... 7

    B.   The Trial Court Erred, as a Matter of Law, by Concluding that Alston, by Virtue of Her Cancer Diagnosis Only, Was Not Deemed to be an Individual with a Disability Pursuant to Statute ....................................................................... 15

    C.   The District Court Failed to Adhere to Summary Judgment Principles by Granting Park Pleasant's Motion for Summary Judgment in the Face of Plaintiff's Disputed and Undisputed Factual Allegations, as Set Forth in Her Two Declarations and Supporting Documentary Evidence, Coupled with Reasonable Inferences Favorable to Plaintiff Drawn From Those Factual Allegations Supporting Her Contention that the Defendant's Purported Justification for Her Termination was Pretextual ......................................... 16

VII.  Conclusion ............................................................................... 19

VIII. Certification of Good Standing ................................................. 19

IX.    Certification re Electronic Filing and Compliance                    19

X.     Certificate of Service                                               20

## TABLE OF CASES, STATUTES AND OTHER AUTHORITIES

### CASES                                                                PAGES

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 106 S. Ct. 2505 (1986)                                        6

*Angell v. Fairmount Fire Prot. Dist.*
907 F.Supp. 2d 1242 (D.Colo.2012)                                         15

*Duraco Products v. Joy Plastic Enterprises, Ltd.*
40 F.3d 1431 (3d.Cir.1994)                                                  6

*EEOC v. Metal Service Co.*
892 F.2d 341 (3d Cir.1990)                                                  7

*Figueroa v. Buccaneer Hotel Inc.*
188 F.3d 172 (3d Cir.1999)                                                  1

*FMC Corp. v. U.S. Department of Commerce*
29 F.3d 833 (3d.Cir.1994)                                                   7

*Garr v. U.S. Heathcare, Inc.*
22 F.3d 1274 (3d.Cir.1994)                                                  6

*Goosby v. Johnson & Johnson Medical, Inc.*
228 F.3d 313(3d Cir.2000)                                                   6

*Hoffman v. Carefirst of Fort Wane, Inc.*
737 F.Supp. 2d (N.D.Ind.2010)                                              6

*Norton v. Assisted Living Concepts, Inc.*
786 F.Supp. 2d 1173 (E.D.Tex.2011)                                        15

*Polselli v. Nationwide Mutual Fire Insurance Company*
23 F.3d 747 (3d.Cir.1994)                                                   7

*Reeves v. Sanderson Plumbing*
530 U.S. 133, 120 S. Ct. 2097 (2000)                                       6

*Stewart v. Rutgers University*
120 F.3d 426 (3d Cir.1997)                                                  6

*United States v. Brown*
595 F.3d 498 (3d.Cir.2010)                                    6

## STATUTES, REGULATIONS AND OTHER

28 U.S.C. § 1291                                             1

42 U.S.C. § 2000e-5(f)(1)                                    1

*ADA Amendment Act*                                       1, 15

*Americans with Disabilities Act of 1990*
42 U.S.C. §§ 12101-12213                                     1

*Civil Rights Act of 1964*
42 U.S.C. § 2000e, et seq. (Title VII)                       1

*Fed.R.Civ.P.* 56(c)                                         6

*Pennsylvania Human Relations Act (PHRA)*
43 Pa.Cons.Stat.Ann. §§ 951-963                             1

*Philadelphia Fair Practices Ordinance*
Phila.Code §§ 9-1100 to 9-1110                              1

## I.  STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq* as amended ("*Title VII*"), the *Pennsylvania Human Relations Act* (*PHRA*), at 43 Pa.Cons.Stat.Ann. §§ 951-963, and the *Philadelphia Fair Practices Ordinance* (Phila.Code §§ 9-1100 to 9-1110).   Joanie Alston ("appellant" or "plaintiff" or "Alston") had brought suit against Defendant, Park Pleasant, Inc. ("Park Pleasant" or "defendant"), in part, under the *Americans with Disabilities Act of 1990* (42 U.S.C. §§ 12101-12213), *et seq.*, for unlawful termination.  The District Court had jurisdiction of this case pursuant to 42 U.S.C. § 2000e–5(f)(1), which provides, in pertinent part, that discrimination claims must be filed in a district court within ninety days of a claimant's receipt of a right to sue letter issued by the U.S. Equal Employment Opportunity Commission (EEOC). *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 176 (3d Cir. 1999).

Appellate jurisdiction lies with this Court, pursuant to 28 U.S.C. § 1291.  The trial judge granted Park Pleasant's motion for summary judgment and denied Alston's motion to alter judgment.

## II.  STATEMENT OF THE ISSUES

A.    Was the Trial Court's denial of Alston's motion for spoliation sanctions an abuse of discretion?

B.    Did the trial court commit legal error by concluding that an individual diagnosed with cancer did not meet the statutory qualification as "an Individual with a Disability" under the ADA Amendments Act, where said individual did not presently have substantial physical limitations?

C.    Did the trial court commit legal error, in granting Park Pleasant's motion for summary judgment, by failing to address and consider Alston's disputed and undisputed material factual allegations and by failing to draw reasonable inferences favorable to Alston from those factual allegations?

The district court's memorandum and order granting Park Pleasant's motion for summary judgment can be found at **App.**(Vol.I) 7-21.    The district court's memorandum and order denying appellant's motion to alter judgment can be found at **App.**(Vol.I) 2-6.

### III.  STATEMENT OF THE CASE

Alston, the Director of Nursing, at Park Pleasant was peremptorily terminated eleven months after her initial hire.  The termination decision occurred within weeks after Alston had been diagnosed with breast cancer and had taken leave to undergo a diagnostic medical procedure.  Despite Alston's requests for documentation supporting the alleged *bona fides* of the termination, none were supplied to her.

Alston's filed a discrimination charge (EEOC Charge No. 530-2013-01221) with the U.S. Equal Employment Opportunity Commission (EEOC), alleging, in part, a discriminatory discharge based on disability.  After exhausting her administrative remedies, Alston pursued her claim in court.  Prior to trial, the court granted Park Pleasant's motion for summary judgment.

### A.    Statement of the Facts Relevant to the Issues Presented for Review

At the time of Alston's hire, as the Director of Nursing, the nursing department at Park Pleasant was disorganized in structure, and was lacking in a coherent

2

centralized nursing policy and processes. **App.**(Vol.II) 409.  Despite the high staff turnover, Alston successfully instituted new hire orientation education, "The Multi-Generational Work Place" to help bridge the gap for communication between the workplace, developed part of the test that was administered to potential RN/LPN candidates where they reviewed a resident scenario and identified additional information needed and developed a nursing note based on this information to identify assessment and critical thinking skills of the candidate. **App.**(Vol.II) 410. During Alston's tenure at Park Pleasant, an annual survey conducted by the Department of Health resulted in deficiency-free findings.  Alston was instrumental in Park Pleasant's significant decreases in the incidences of patients falling and incidences of skin issues. **App.**(Vol.II) 411.  Alston successfully addressed pharmacy issues of billing, record-keeping, compliance reporting and cost savings, implementing an auditing of glucose testing to decrease facility costs and improve in resident comfort, developing a policy for identifying residents who should have nothing by mouth in preparation for tests, implementing a policy that all RNs and LPNs had to complete on-line wound care training, and developing a template for organizing policy and procedures with a numbering system for each department. **App.**(Vol.II) 411-412.

Carmella Kane, Nursing Home Administrator, and Nancy Kleinberg, CEO and Administrator, were made aware of Alston's health issues on April 30, 2012, the day after Alston experienced bleeding from her left breast.  Alston informed Ms. Kane of a scheduled mammogram, appointment with her surgeon and a scheduled open

3

biopsy.   Alston's time records reflect her absences due to her medical issues. **App.**(Vol.II) 413.   Alston was in sick leave status for 10 consecutive days in June/July, 2012. **App.**(Vol.II) 414.   Alston had personal discussions with Ms. Kleinberg and Ms. Kane concerning her medical condition and medical development. Both of them shared with Alston their personal experiences or their knowledge of the personal experiences of others who had actual or potential cancer issues.   Alston also informed Ms. Kane that her family had a history of cancer. **App.**(Vol.II) 414.

Alston's absences from work due to her medical condition, diagnosed as cancer on July 12, 2012, were on May 1, 2, 11, 21, June 11, 20, June 25-July 9, 12, 13, 14, 20 and August 1, the day of her termination.   In many instances, Alston would work part-days, based on medical appointments. **App.**(Vol.II) 414-415.

Alston's alleged performance deficiencies were based exclusively on the credibilities of two witnesses, Kleinberg and Kane, who Alston had shown to be untruthful and who Alston discredited. **App.**(Vol.II) 419-423.   Park Pleasant produced no independent evidence in the form of emails, memos, work product, counseling sessions, warnings, meetings with HR, etc., to support allegations that Alston allegedly failed to perform job duties, failed to develop policies and procedures as requested and allegedly engaged in adversarial behavior. **App.**(Vol.II) 419-423.   Alston produced evidence that, contrary to Kane's untruthful statements, Alston never refused admission of any patient and never left early without processing a new patient. **App.**(Vol.II) 419-423.   Also, Alston produced evidence that Kleinberg untruthfully stated, in response to discovery, that she was not in possession of

4

electronically stored information and that she intentionally withheld from Alston the fact that she was in possession of hard drives which contained such information. **App.**(Vol.II) 444-447, 460-461, 470.

The trial court based its summary judgment decision upon the statements of Carmella Kane and Nancy Kleinberg and did not address the credibility issues of those two people, did not address Park Pleasant's misrepresentations concerning electronically-stored information and did not address the lack of independent corroborative evidence supporting the alleged justification for Alston's termination.

## IV. <u>STATEMENT OF RELATED CASES AND PROCEEDINGS</u>

This case has not been in this court previously. The case is related to Alston's administrative filing at the EEOC, Charge No. 530-2013-01221.

## V. <u>SUMMARY OF ARGUMENT</u>

The district court erred in granting summary judgment by failing to adhere to the fundamental summary judgment principles, as evidenced by accepting Park Pleasant's statement of disputed facts, by concluding that Park Pleasant's witnesses were credible, by rejecting the statements of Alston as not credible and by drawing inferences favorable to Park Pleasant, rather than drawing reasonable inferences favorable to Alston. The district court erred when it concluded that Alston failed to establish that, under law, she qualified as an individual with a disability. Lastly, the district court abused its discretion when it denied spoliation sanctions, notwithstanding Park Pleasant's untruthful representations in response to Alston's

5

discovery as to the existence of email records.

## VI. ARGUMENT

### (a)    Scope and Standard of Judicial Review

The court's review of a grant of summary judgment is *de novo*. *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 318 (3d Cir.2000). Summary judgment should be granted only where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P.* 56(c). In making its determination, the court should view the facts in the light most favorable to the non-moving party and draw all inferences in that party's favor. *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2510-2511 (1986). These requirements are to be applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues. *Stewart v. Rutgers University*, 120 F.3d 426, 431 (3d Cir. 1997).

"A district court abuses its discretion if its decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *United States v. Brown,* 595 F.3d 498, 511 (3d Cir.2010).

The "[abuse of discretion] standard may incorporate other standards of review, for the Supreme Court has indicated that a district court `would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" (citation omitted) See *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1279 (3d Cir.1994); *Duraco Products v. Joy Plastic*

6

*Enterprises, Ltd.*, 40 F.3d 1431, 1438 (3d Cir.1994).

The court's standard of review with regard to alleged errors in applying the law to the facts is plenary. *Polselli v. Nationwide Mutual Fire Insurance Company*, 23 F.3d 747, 750 (3d Cir.1994); *FMC Corp. v. U.S. Department of Commerce*, 29 F.3d 833, 838 (3d Cir.1994); *EEOC v. Metal Service Co.*, 892 F.2d 341, 345-6 (3d Cir.1990).

A.
**The Trial Court's Denial Alston's Motion for Spoliation Sanctions Was an Abuse of Discretion**

Park Pleasant failed to preserve information which Alston had requested as early as June 14, 2012, a month and a half before her alleged discriminatory termination (**App.**(Vol.II) 450), and reinforced by her follow-up letter request for information of November 26, 2012, less than three months after she had been terminated. **App.**(Vol.II) 451-451; **App.**(Vol.II) 456-457.

During the course of litigation, Alston served Park Pleasant with interrogatories (**App.**(Vol.II) 459-464) and document requests (**App.**(Vol.II) 465-472), in which she sought email and paper documentation to support her claims of disability discrimination. The interrogatory responses were verified by Nancy Kleinberg. In Park Pleasant's verified answer to Interrogatory No. 1, Park Pleasant stated

". . . .after Plaintiff was terminated from employment, Park Pleasant did not delete the emails in Plaintiff's email account, nor did Park Pleasant take any measures to retain the emails in Plaintiff's email account. Following receipt of the demand letter from Plaintiff's counsel, which occurred shortly before the sale of Park Pleasant assets, Defendant retained all documents that it believed could be relevant to a potential action by Plaintiff or were reasonably calculated to lead to the discovery of admissible evidence or were

7

reasonably likely to be requested if litigation ensued, which did not include all emails in Plaintiff's email account."

In Park Pleasant's verified answer to Interrogatory No. 1, Park Pleasant stated

".  . . . Park Pleasant did not delete the emails in Deborah Campbell's email account, nor did Park Pleasant take any measures to retain the emails in Ms. Campbell's email account. Following receipt of the demand letter from Plaintiff's counsel, which occurred shortly before the sale of Park Pleasant assets, Defendant retained all documents that it believed could be relevant to a potential action by Plaintiff or were reasonably calculated to lead to the discovery of admissible evidence or were reasonably likely to be requested if litigation ensued, which did not include all emails in Deborah Campbell's email account."

In the narrative responses to the request for production, Park Pleasant stated

Req.P. 3   ". . . .Park Pleasant did not search for, collect or retain all of the emails in Plaintiff's email account and has no ability to obtain those emails at this juncture. Defendant has produced all emails in its possession that contain communications with Plaintiff at PARK PLEASANT.

Req.P. 4   ". . . .Defendant has produced all emails relating to Plaintiff's conduct and performance deficiencies as PARK PLEASANT."

Req.P. 6   ". . . .. Park Pleasant did not search for, collect or retain all of the emails in Deborah Campbell's email account and has no ability to obtain those emails at this juncture. Defendant has produced all emails in its possession that contain email communications with Deborah Campbell as PARK PLEASANT."

Park Pleasant did not search for, collect or retain all of the emails or attachments to emails, sent by either Nancy Kleinberg, Carmella Kane, Sonjii West or Lisa Reifenrath to Plaintiff and has no ability to obtain those emails at this juncture. Defendant has produced all emails responsive to this request in its possession. Defendant has produced all emails in its possession that contain communications with Plaintiff at PARK PLEASANT

Park Pleasant did not search for, collect or retain all of the emails or attachments to emails sent by Nancy Kleinberg, Carmella Kane,

8

Sonjii West and Lisa Reifenrath to Plaintiff and has no ability to obtain those emails at this juncture. Defendant has produced all emails in its possession that contain communications with Plaintiff at PARK PLEASANT

Park Pleasant did not search for, collect or retain all emails or attachments to emails, received by Plaintiff from either Nancy Kleinberg, Carmella Kane, Sonjii West or Lisa Reifenrath and has no ability to obtain those emails at this juncture. Defendant has produced all emails in its possession that contain communications with Plaintiff at PARK PLEASANT

Park Pleasant did not search for, collect or retain all emails or attachments to emails, received by Plaintiff from either Nancy Kleinberg, Carmella Kane, Sonjii West or Lisa Reifenrath and has no ability to obtain those emails at this juncture. Defendant has produced all emails in its possession that contain communications with Plaintiff at PARK PLEASANT

Park Pleasant did not search for, collect or retain all emails or attachments to emails, sent by Nancy Kleinberg, Carmella Kane, Sonjii West or Lisa Reifenrath to Deborah Campbell and has no ability to obtain those emails at this juncture. Without waiver of said objections, Defendant has produced all emails in its possession that contain email communications with Deborah Campbell as PARK PLEASANT

Park Pleasant did not search for, collect or retain all emails or attachments to emails, sent by Nancy Kleinberg, Carmella Kane, Sonjii West or Lisa Reifenrath to Deborah Campbell and has no ability to obtain those emails at this juncture. Defendant has produced all emails in its possession that contain email communications with Deborah Campbell as PARK PLEASANT

Park Pleasant did not search for, collect or retain all emails or attachments to emails, sent by Deborah Campbell to either Nancy Kleinberg, Carmella Kane, Sonjii West or Lisa Reifenrath and has no ability to obtain those emails at this juncture. Defendant has produced all emails in its possession that contain email communications with Deborah Campbell as PARK PLEASANT

Park Pleasant did not search for, collect or retain the emails between Deborah Campbell and Nancy Kleinberg, Carmella Kane, Sonjii West or Lisa Reifenrath and has no ability to obtain those emails at this

9

juncture. Defendant has produced all emails in its possession that contain email communications with Deborah Campbell as PARK PLEASANT

Defendant has produced all responsive documents aside from emails, in its possession at PARK PLEASANT allegedly supporting the assertion by Park Pleasant that plaintiff had exhibited deficiencies in her performance and conduct while employed as the Director of Nursing.

In an email of May 27, 2015 (**App.**(Vol.II) 473), Park Pleasant's counsel represented that "My client retained those emails which seemed reasonably related to the claims set forth in your demand letter." Alston's counsel sent a follow-up email on May 29, 2015 (**App.**(Vol.II) 474), in which he stated

"Also, I note that you have objected to each Request Nos. 1-3, 6-14 and 7-18 but have stated that notwithstanding the objections, documents have been produced. By your answer, I have no way of knowing whether you produced some documents or all documents in your client's possession and control. I request, therefore, that you clarify your responses to indicate whether there are any documents in your client's possession and control relating to the aforesaid document requests which have been withheld.

With regard to your response to Request Nos. 17 and 18, the documents that plaintiff is seeking are any and all documents in the possession and control of defendant which were created by, submitted by or received from plaintiff. I request that in view of this clarification, defendant has produced all such documents requested.

Park Pleasant's counsel promptly responded and stated

1. I have not withheld any documents from production other than emails between counsel and Ms. Kleinberg, all of which are dated after your demand letter in November 2012. The production of a Privilege Log for such communications is not warranted, will unnecessarily drive up the costs of litigation, is not routinely produced by counsel and in fact was not produced by you either.

2. As explicitly stated in Defendant's Response to Plaintiff's document requests, Defendant preserved all evidence that was

reasonably calculated to lead to the discovery of admissible evidence or was reasonably likely to be requested if litigation ensued and has produced ALL such documents EVEN IF YOU DID NOT REQUEST PRODUCTION OF SUCH DOCUMENTS.

To support Alston's contention concerning Park Pleasant's destruction of critical documentation, Alston noticed, for deposition, Park Pleasant's designated Rule 30(b)(6) representative (**App.**(Vol.II) 475-477) to provide information in the following areas

1.  Knowledge of defendant's policies concerning preservation of email records, deletion or destruction of emails and backing up emails and archiving emails and data for the period beginning with the date of plaintiff's hire until the present time.

2.  Knowledge of defendant's electronic search and retrieval efforts, if any, in responding to plaintiff's discovery requests.

3.  Knowledge of the preservation of electronic records, including emails and attachments to emails, beginning with the date of plaintiff's hire until the present time.

4.  Knowledge of defendant's contractual arrangements with any person or entity concerning Park Pleasant's electronic data storage, electronic data backup and electronic data preservation systems.

5.  Knowledge of the specific payments made by defendant or on behalf of defendant to persons or entities who performed services for defendant concerning defendant's email management system and defendant's electronic data storage, electronic data backup and electronic data preservation systems.

6.  Knowledge of the location of all of defendant's email records and the custodian of those records covering the period beginning with the date of plaintiff's hire until the present time.

11

Park Pleasant refused to produce its Rule 30(b)(6) designee. (**App.**(Vol.II) 478).

Park Pleasant intentionally destroyed electronic information and paper documentation, all of which were material to Alston's affirmative defenses of discrimination based on disability. The critical information sought by Alston was directly relate to Park Pleasant's pretextual motivation for terminating Alston's employment. The information that Park Pleasant has destroyed relates to all aspects of Alston's performance as the Director of Nursing, as well as the performance and performance expectation of Alston's successor as the Director of Nursing, Deborah Campbell. Alston was terminated for reasons that were never articulated in writing at the time of her termination. As the Director of Nursing, Alston interacted with a number of individuals including management and administrative personnel. The destroyed information which was contained in Park Pleasant's email system were expected to show, in part

- a. how the treatment of Alston changed after her health issues arose,

- b. Alston's workload before and after her health issues arose,

- c. the nature of the work assignments of Alston before and after her health issues arose,

- d. the nature of the performance expectations for accomplishing tasks before and after Alston's health issues arose,

- e. the communications by, between and among management officials, especially Nancy Kleinberg, concerning Alston's health issues and the need to seek a replacement as the Director of Nursing,

- f. the communications by, between and among management

12

officials, especially Nancy Kleinberg, concerning the identification of Deborah Campbell as the replacement for Alston as the Director of Nursing after the health issues arose,

g.      the nature of the work assignments of Deborah Campbell after Alston was terminated,

h.      Deborah Campbell's workload as the Director of Nursing after Alston was terminated,

i.      the nature of the work assignments of Deborah Campbell as the Director of Nursing after Alston was terminated,

j.      the performance expectations for Deborah Campbell for accomplishing tasks after Alston was terminated,

k.      the performance of Alston as compared and contrasted to Deborah Campbell in their respective roles as the Director of Nursing, etc.

The destroyed information, if it had been produced, would have shown, in part, that, after management became aware of Alston's cancer diagnosis, management altered expectations, made comments concerning Alston's health condition and potential absences from work and intentionally sabotaged Alston's efforts to carry out her responsibilities as the Director of Nursing. The emails not produced and the written work product of Alston, also not produced, would have shown that Alston carried out her responsibilities as the Director of Nursing in an exemplary fashion, promptly responded to emails, performed all assigned tasks, and, in the face of understaffing and operational issues that could not possibly have been addressed by Alston personally, worked collaboratively with management officials. The email of June 14, 2012 (**App.**(Vol.II) 450), fully supports Alston's allegations of a pretextual termination. Alston received no response to the email.

13

The district court erred in denying Alston's motion for spoliation sanctions (**App.**(Vol.II) 438-478), as the motion was fully supported by the record, particularly Park Pleasant's verified response to interrogatories and the inconsistent deposition testimony of Nancy Kleinberg. Kleinberg was untruthful when she denied, in her discovery responses, the existence of relevant emails. **App.**(Vol.II) 525-530. At her deposition, she stated that Park Pleasant utilized the services of an IT contractor. **App.**(Vol.II) 531. Park Pleasant's counsel, long after the untruthful discovery responses were served on Alston and after Alston made efforts to depose the persons who were knowledgeable of Park Pleasant's IT practices and email system, revealed that there was an IT person who would perform a search of a storage device known to have contained the emails that Park Pleasant denied the existence of. The refusal of Park Pleasant to produce the relevant emails or to provide any affidavit in which it set forth reasons why the email system could not have been readily and easily searched at an insignificant cost, compels a finding that Park Pleasant intentionally withheld material information which, if produced, fully supported Alston's allegations and which discredited the alleged pretextual excuses provided by Park Pleasant. **App.**(Vol.II) 535-555 (Plntf.'s Declaration in Opposition to Deft.'s Stmt. of Facts, at ¶¶ 33, 36, 39, 42).

Email communications were the heart of the evidence. Park Pleasant, in responses to the written discovery requests, denied that it had emails other than the paucity of emails that had been produced. However, after taking the deposition of Kleinberg, Park Pleasant's written responses to discovery were proved to be

untruthful.  Moreover, Park Pleasant refused to produce the emails.  The email history, had it been produced, would have established that Nancy Kleinberg, the chief principal of Park Pleasant had actual knowledge of Alston's cancer diagnosis and treatment for cancer and has concerns and reservations about retaining Alston as the Director of Nursing because of Alston's absences for treatment or other medical issues.  The emails, if produced, would also have established that Alston promptly addressed issues, promptly responded to emails and promptly and competently carried out her responsibilities as the Director of Nursing.  The emails, if produced, would also show that shortly after Alston received her cancer diagnosis, there were discussions about finding a replacement for the Director of Nursing.

B.

**The Trial Court Erred, as a Matter of Law, by Concluding that Alston, by Virtue of Her Cancer Diagnosis Only, Was not Deemed to be an Individual with a Disability Pursuant to Statute**

It is acknowledged that this issue is a case of first impression within this jurisdiction, but that other jurisdictions confronted with the same issue have ruled to the contrary.  The Courts have recognized that under the ADA Amendments Act that an individual who has been diagnosed with cancer which is in remission qualifies as an individual with a disability.  For instance, in *Angell v. Fairmount Fire Prot. Dist.*, 907 F.Supp. 2d 1242, 1250-51 (D.Colo.2012) aff'd, 550 F.App'x 596 (10th Cir.2013), the court held that

> Based upon the ADAAA and the EEOC's post-enactment regulations, several courts have held that a Plaintiff's cancer is a disability for purposes of the ADAAA, even when the cancer is in remission.

See, also, *Norton v. Assisted Living Concepts, Inc.*, 786 F.Supp. 2d 1173, 1186

15

(E.D.Tex.2011) and *Hoffman v. Carefirst of Fort Wayne, Inc.*, 737 F.Supp. 2d 976,

985-86 (N.D.Ind.2010).

## C.
### The District Court Failed to Adhere to Summary Judgment Principles by Granting Park Pleasant's Motion for Summary Judgment in the Face of Alston's Disputed and Undisputed Factual Allegations, as set forth in Her Two Declarations and Supporting Documentary Evidence, Coupled with Reasonable Inferences Favorable to Alston Drawn from Those Factual Allegations supporting Her Contention that the Park Pleasant's Purported Justification for Her Termination Was Pretextual

There was virtually no evidence presented by Park Pleasant, aside from their

self-serving testimonies which, in some instances, were outright discredited by the

evidence of record, to support Park Pleasant's assertion that there were no genuine

issues of material fact for a fact-finder, after making credibility assessments and

weighing the conflicting evidence, could resolve. Park Pleasant's entire case was

bottomed on the statements of Kleinberg and Kane, unsupported by admissible

documentary evidence and contradicted by Alston. **App.**(Vol.II) 546 (¶ 39). In

response to the motion for summary judgment, Alston proffered two statements, both

made under penalty of perjury, in which she set forth the factual allegations

supporting her discrimination case and in which she refuted the assertions made by

Kleinberg and Kane. **App.**(Vol.II) 409-416, 417-437. Park Pleasant produced no

admissible documentation supporting its underlying factual allegations. Park

Pleasant produced no work product of the Alston. Moreover, and more importantly,

Park Pleasant, in its reply to Alston's two verified statements in her opposition to Park

Pleasant's motion for summary judgment, did not address or discredit any of the

allegations of Alston. For instance, Alston accused Kane of making a blatantly

untruthful statement that Alston refused the admission of a patient and had left work on a specific day rather than processing the patient for admission. **App.**(Vol.II) 532-534 (Kane Dep.); **App.**(Vol.II) 19-20 (*Deft. Statement of Facts* at ¶¶ 14-17). Alston, under oath, stated that she remained at work after hours and that the patient was in fact admitted that day. **App.**(Vol.II) 541-542 (¶¶ 15-16). Park Pleasant's own time records show that Alston, on the day of the admission, worked over 10 hours and left work after 7:00pm to ensure that the patient had been admitted. **App.**(Vol.II) 556 (email from Alston); **App.**(Vol.II) 557 (time sheet).

Park Pleasant claims not to have knowledge of Alston's cancer condition and claims that Alston prepared a "sham" affidavit which was inconsistent with her deposition testimony. A reading of the deposition taken by Park Pleasant of Alston shows that Alston's response to questioning concerning specific conversations she had with Nancy Kleinberg was uncertain and equivocal, because she did not have emails and other documents presented to her which would have refreshed her recollection. **App.**(Vol.II) 558-561 (excerpts from plnt.'s deposition,p.195). She did not categorically state that she had absolutely no conversations with Nancy Kleinberg and Carmella Kane concerning her cancer diagnosis. The facts of record show that Alston was forthcoming in emails and in personal conversions she had with Kleinberg and Kane concerning her family history of cancer, deaths in her family due to cancer and her various medical treatment and hospitalization. **App.**(Vol.II) 566-569 (Plntf.'s Declaration at ¶¶ 11-19); **App.**(Vol.II) 570 (plntf. email); **App.**(Vol.II) 571-575 (excerpts from Plntf.'s employment app.). Alston was absent from work for 10 days

and underwent surgical procedures. **App.**(Vol.II) 576. After she returned to work, she had a series of additional absences due to ongoing medical appointments. **App.**(Vol.II) 569-569 (¶ 19). In fact, on the day of her termination, she had come to work approximately three hours after her normal shift began because of her medical treatment. In her declaration in opposition to Park Pleasant's summary judgment motion, Alston confirmed that she did indeed have discussions about her cancer diagnosis with Kleinberg and Kane. **App.**(Vol.II) 537-541 (¶¶ 10-19); **App.**(Vol.II) 558-561 (pp.192-204). Her statement was consistent with her detailed description of approved absences from work after she had her cancer diagnosis.

Kane's unsupported, self-serving statement that Alston was not performing is totally inconsistent with the document that Kane created the day before Alston's termination. Alston had alleged that her treatment by Park Pleasant dramatically changed her after medical condition came to light. **App.**(Vol.II) 544-549 (¶¶ 33, 36, 39). After the July 26, 2012 meeting, Alston met with Kane and Riefenrath, each of whom prepared minutes of the meeting they had with Alston. In their respective minutes, there was no indication that Alston's performance was deficient in any respect. In fact, Kane, in her own handwriting stated that there was a follow up meeting scheduled for August 3. **App.**(Vol.II) 577-578. The documentary evidence of record, along with Alston's testimony and declarations of record, with reasonable inferences favorable to Alston from those documents and allegations are that Kleinberg, after recognizing Alston's repeated absences from work after her cancer diagnosis, decided on August 1, 2012, after Alston arrived at work late due to a three-

18

hour medical appointment, that Alston needed to be terminated because of her medical condition.   Kleinberg refused to explain to Alston the reason for the termination.   Moreover, prior email history from Alston to Kane, during the period that Alston felt a change in attitude towards her after her medical condition arose, shows that Alston requested any information or feedback concerning any alleged deficiencies in her performance and no response was ever made to Alston. **App.**(Vol.II) 541-542 (¶¶ 20-21); **App.**(Vol.II) 570.  This fact, along with reasonable inferences favorable to Alston, support Alston's contention that her termination was pretextual.

### VII.  CONCLUSION

Alston respectfully requests that the court reverse the orders of the court below and remand the case for trial on the discrimination claims.

July 11, 2016

DENNIS L. FRIEDMAN
Attorney for Appellant
1515 Market Street, Suite 714
Philadelphia, PA  19102
(215) 567-4600

### VIII. CERTIFICATION OF GOOD STANDING

I hereby certify that I am a member in good standing of the Bar of this Court.

### VIIII.  CERTIFICATION RE ELECTRONIC FILING & COMPLIANCE

I hereby certify that the electronic copy of the Brief for Appellant is identical to the hard copies that were filed on June 27, 2016.

The electronic copy of the corrected brief for appellant was scanned using the

19

Norton Internet Security, Version 2015.

The number of words in the corrected brief, excluding corporate disclosures, table of contents, table of citations, and attorney certifications, is 4,868.

July 11, 2016

DENNIS L. FRIEDMAN
Attorney for Appellant
1515 Market Street, Suite 714
Philadelphia, PA  19102
(215) 567-4600

## X.  CERTIFICATE OF SERVICE

Dennis L. Friedman, Esquire, certifies that two copies of the Brief for Appellant (corrected) were transmitted on July 11, 2016 by regular mail to the attorney for appellee, Caren Litvin, Esquire, Mancheski and Bunker, 1600 John F. Kennedy Boulevard, Suite 500, Philadelphia, PA  19103.

DENNIS L. FRIEDMAN, ESQUIRE

Dated:  July 11, 2016